UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LADON CHURN,

               Plaintiff,

v.

UNKNOWN BLACK et al.,

               Defendants.

_____/

Case No. 1:21-cv-540

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Additionally, the Court will deny Plaintiff's motion to amend and supplement. (ECF No. 6.)

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which

he complains occurred at that facility. Plaintiff names the following ICF officials as Defendants: Corrections Officer Unknown Black, Sergeant Unknown Bledsoe, and Lieutenant Unknown Howard. (Compl., ECF No. 1, PageID.1–3, 5.)

In Plaintiff's complaint, he states that, on May 27, 2021, he was housed "in ICF's general population." (*Id.*, PageID.2–3.) Plaintiff states that he "advocat[ed] for better condition[s] via phone before retreating to a corner of the yard [for] fellowship with another prisoner; [v]alid grievances had been filed and exhausted." (*Id.*, PageID.3.) Thereafter, "[h]aving bad sinus[e]s, Plaintiff removed toilet tissue from his back[ ]pocket, wiped his runny nose, and discarded the soiled tissue by poking it through the chainliked [sic] fence." (*Id.*) The yard is monitored by five security cameras and two to four "custody staff are patrolling at all times." (*Id.*)

The yard period ended around 9:00 a.m., and "Plaintiff returned to his solitary room without incident; passing through the metal detector as he did." (*Id.*) At around noon, "Plaintiff was removed from his general population room, placed in handcuffs, and taken to a segregation housing unit . . . against his will." (*Id.*) Plaintiff was told he was "being charged with 'Possession of a Weapon'" by the escorting officer, Sergeant Conklin. (*Id.*)

Plaintiff states that, thereafter, Sergeant Bledsoe "appeared and a verbal dispute ensued." (*Id.*) Sergeant Bledsoe "claimed he'd 'looked at the camera [him]self,'" which Plaintiff alleges "was a lie." (*Id.*, PageID.4.) "Plaintiff showed Sgt. Bledsoe the remaining toilet tissue from his back[ ]pocket." (*Id.*)

Plaintiff was "then read the misconduct report and served his copy," and he was "stripped naked, searched and made to wait for his personal property to be delivered to th[e] segregation unit, room #30." (*Id.*) Plaintiff contends that "[r]oom #30 is the most restrictive room in the MDOC[;] [i]t's a[n] extreme sensory deprivation room without a window view to the outside" and

"a 'peek-a-boo' window on the front door." (*Id.*) Plaintiff states that this type of room is "used against chronic mast[u]rbators," and "Plaintiff is not a chronic mast[u]rbator." (*Id.*) Further, Plaintiff states that "room #30 is squalid[;] human waste, feces, sem[e]n and spit stained every wall, surface and bed slab," the walls "were marked with blasphemous or profane graffiti," and "[t]he toilet was stained with black mold." (*Id.*) "Plaintiff [was] shocked" and "horrified." (*Id.*, PageID.5.) Plaintiff alleges that "Unit 1, room #30, violates the MDOC[']s written guidelines." (*Id.*)

On or around May 29, 2021, Corrections Officer Black worked on Unit 1, and Plaintiff asked Corrections Officer Black why he had written the misconduct ticket. (*Id.*) Corrections Officer Black "replied, 'It's my first time ever writing a ticket . . . I just did what I was told.'" (*Id.* (ellipses in original).) Corrections Officer Black indicated that he had not watched the video of the incident and that he believed Sergeant Bledsoe and Lieutenant Howard had viewed the video. (*Id.*)

The following day, May 30, 2021, "A wing," which is the "detention wing," was "so loud Plaintiff [could not] sleep." (*Id.*) On June 1, 2021, Hearings Investigator M. Demps conducted a prehearing investigation. (*Id.*, PageID.5–6.) "Plaintiff availed himself of the compulsory process[e]s, compelling camera footage of the yard," and, on June 2, 2021, the Hearings Investigator had "the false misconduct referred for rescinding by the Warden." (*Id.*, PageID.6 (emphasis omitted).)

On June 3, 2021, Sergeant Conklin conducted the count in Plaintiff's unit and stated, "'I'm surprised you're still in the hole[;]' [t]he 'hole' means segregation." (*Id.*) Plaintiff contends that "[t]here was no legitimate reason for Plaintiff's continued detention at that point." (*Id.*) That same day, two "white prisoners who'd gone to disciplinary court, and were found 'not guilty,' were returned to their general population rooms," "[b]ut not Plaintiff." (*Id.*)

While in segregation, Plaintiff states that he lost "adequate nutrition, access to phones, fresh air, sunlight, cleaning supplies, outside activities, use of personal appliances and access to writing materials, ink pens and paper." (*Id.*, PageID.7.)

Plaintiff alleges that "Lieutenant Howard is Sergeant Bledsoe's superior officer," and "Sergeant Bledsoe is C/O Black's superior officer." (*Id.*) "As 'shift commander,' [Lieutenant] Howard is believed to have reviewed the camera footage on 5/27/21, with Bledsoe," and "[a]s 'shift commander,' [Lieutenant] Howard 'reclassified' Plaintiff to 'punitive detention' based solely on the false pretense of misconduct." (*Id.*) Plaintiff claims that "[o]nly Black[]s are being arbitrarily held in punitive detention for extended periods of time." (*Id.*)

Based on the foregoing allegations, Plaintiff sets forth the following claims for relief:

> Count I[:] Said prison employee[]s violated the First and Fourteenth Amendments . . . when they decided to charge "[Plaintiff] . . . tossed a piece of metal . . . through the fence during yard . . . this was verified by reviewing the footage . . ." in this continuous pattern of retaliatory harassment targeting Black[]s whom will speak about abusive prison conditions: resulting in unnecessary physical pain and loss, un-related to a legitimate pen[o]logical objective.

> Count II[:] Same prison employee[]s are violating the Eighth and Fourteenth Amendments . . . when they conspired to place grievants in detention, and keep grievant in such squalor long after the original reason no longer existed; resulting in unnecessary pain and loss un-related to a legitimate penological objective.

(*Id.* at 8 (first, second, third, ninth, tenth, eleventh, and twelfth alterations added).) As relief, Plaintiff seeks "general, punitive, [and] compensatory" damages, as well as declaratory relief. (*Id.*, PageID.9.)

## II.    Motion to Amend and Supplement

Plaintiff filed a motion to amend and supplement, and he attached a proposed supplemental complaint to his motion. (ECF Nos. 6, 6-1.) With respect to amendments, although a district court may allow a plaintiff to amend his complaint before entering a sua sponte dismissal, it is not required to do so. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Coleman v.*

*Tollefson*, 733 F.3d 175, 177 (6th Cir. 2013) (discussing that a court need not permit a plaintiff to amend his complaint before dismissing under the PLRA). Leave to amend should be denied if the amendment would be futile. *See Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Further, leave to amend may be denied if the amendment would result in the improper joinder of parties or claims. *Cf.* Fed. R. Civ. P. 21 (setting forth that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party"). For the reasons set forth below, the Court concludes that permitting Plaintiff to supplement his complaint would result in the misjoinder of claims and Defendants in this action.

In Plaintiff's proposed supplemental complaint, he seeks to add (i) a conspiracy claim under 42 U.S.C. § 1985(3) and (ii) a claim regarding an "attack" by another inmate, which occurred in October 2021, and a related use of force against Plaintiff by an unnamed prison official who responded to the attack. (ECF No. 6-1, PageID.33–34.) Plaintiff also seeks to add the following ICF officials as Defendants: Inspector M. Ferguson, Inspector Unknown Cassel, and Sergeant Unknown Conklin, all of whom he contends were involved in the events underlying the two new claims. (*Id.*, PageID.45.)

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy, (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).

From Plaintiff's proposed supplemental complaint, it appears that Plaintiff believes the events underlying Plaintiff's original complaint, which occurred in May and June of 2021, are part of a vast conspiracy by ICF officials that ultimately resulted in Plaintiff being attacked by another prisoner in October 2021. (*See generally* ECF No. 6-1.) Plaintiff's conspiracy allegations are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete events that occurred over a period of time involving several individual officers. Besides Plaintiff's conclusory statements, Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement. He relies entirely on a highly attenuated inference from the mere fact that he encountered and was subjected to allegedly objectionable treatment by these Defendants on several separate occasions over an approximately five-month period.

As the United States Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy. Therefore, allowing Plaintiff to add this claim would be futile. Further, because Plaintiff fails to state a plausible claim of conspiracy—which is the claim upon which Plaintiff relies to connect the claims and Defendants in the original complaint to the claims and Defendants in the proposed supplemental complaint—

he fails to show that the events set forth in his proposed supplemental complaint are transactionally related to the events underlying his original complaint.

With respect to the joinder of parties and claims in a single lawsuit, Federal Rule of Civil Procedure 20(a) limits the joinder of parties, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Specifically, Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation . . . 'by making all prisoner [litigants] . . . feel the deterrent effect created by liability for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127–28 (5th Cir. 1997) (quoting *Jackson v. Stinnett*, 102 F.3d 132, 136–37 (5th Cir. 1996)). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998) (declining to allow "litigious prisoners to immunize frivolous lawsuits from the 'three strikes' barrier by the simple expedient of pleading unexhausted habeas claims as components of § 1983 suits"); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims turn out to be frivolous. Courts are therefore obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, as discussed above, Plaintiff fails to show that the events set forth in his proposed supplemental complaint are transactionally related to the events underlying his original complaint. Therefore, allowing Plaintiff to supplement his complaint with the three additional named defendants and his two additional claims would result in the misjoinder of claims and Defendants in this action. Accordingly, Plaintiff's motion to amend (ECF No. 6) will be denied.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      First Amendment Retaliation

Plaintiff alleges that Defendants Black, Bledsoe, and Howard retaliated against him "when they decided to charge [that] '[Plaintiff] . . . tossed a piece of metal . . . through the fence during yard . . . this was verified by reviewing the footage,'" which Plaintiff contends was "in this continuous pattern of retaliatory harassment targeting Black[]s whom will speak about abusive prison conditions." (Compl., ECF No. 1, PageID.8.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on May 27, 2021, while housed "in ICF's general population," he "advocat[ed] for better condition[s] via phone before retreating to a corner of the yard [for] fellowship with another prisoner; [v]alid grievances had been filed and exhausted." (Compl., ECF No. 1, PageID.2–3.) While in the yard, Plaintiff "removed toilet tissue from his back[ ]pocket, wiped his runny nose, and discarded the soiled tissue by poking it through the chainliked [sic] fence." (*Id.*, PageID.3.) Thereafter, Plaintiff "returned to his solitary room without incident." (*Id.*) Three hours later, Plaintiff was taken to the segregation unit and "charged with 'Possession of a Weapon.'" (*Id.*) Two days later, when Plaintiff asked Defendant Black why he had written the misconduct ticket, Defendant Black told Plaintiff that he "just did what [he] was told." (*Id.*) Corrections Officer Black indicated that he had not watched the video of the incident and that he believed Sergeant Bledsoe and Lieutenant Howard had viewed the video. (*Id.*) Liberally construing Plaintiff's claims, as the Court is required to do, it appears that Plaintiff contends that the misconduct charge for possession of a weapon was issued in retaliation for him "advocating for better conditions via phone" and filing "valid grievances." (*Id.*)

With respect to the first element of a retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley*

12

*v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (emphasis omitted) (quoting *Pearson*, 471 F.3d at 741) (finding that a conversation constituted protected petitioning activity). In this case, it is not clear to whom Plaintiff was speaking when he was "advocating for better condition[s] via phone," or when, and against whom, he filed "[v]alid grievances" that had been "exhausted." (Compl., ECF No. 1, PageID.3.) Nothing in the complaint suggests that either while he was "advocating . . . via phone" or when he filed grievances, he was complaining about any actions by the named Defendants. (*Id.*) Regardless, because the filing of non-frivolous grievances constitutes protected activity, the Court assumes, without deciding, that Plaintiff has stated the first element of a retaliation claim.

With regard to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Here, Plaintiff alleges that he received a misconduct charge for possession of a weapon, and his receipt of a misconduct charge constitutes an adverse action.

Finally, to sufficiently state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct. Plaintiff's allegations regarding this third element fall short. Retaliation is easy to allege but it can seldom be shown by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff has not provided sufficient facts from which the Court could reasonably infer that Defendants issued Plaintiff a misconduct ticket for possession of a weapon because Plaintiff had "advocat[ed] for better condition[s] via phone" or filed "valid grievances." (Compl., ECF No. 1, PageID.3.) Nothing in the complaint suggests that Defendants were aware that Plaintiff had used the phone to "advocat[e] for better conditions" or filed grievances. (*See id.*) The most Plaintiff has alleged is that he had previously filed "valid grievances," and on May 27, 2021, he "advocat[ed] for better condition[s] via phone." (*Id.*, PageID.2–3.) Then, later that same day, after he threw an item through the prison's fence—which he indicates was toilet tissue—he received a misconduct charge for possession of a weapon. (*Id.*, PageID.3.)

14

In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Plaintiff's allegations do not support an inference that the temporal proximity is "significant enough" here. *Muhammad*, 379 F.3d at 417–18 (citation omitted). As discussed above, Plaintiff's allegations do not suggest that any of the named Defendants were aware of Plaintiff's previously filed grievances or that Plaintiff had "advocat[ed] for better condition[s] via phone" on May 27, 2021. (Compl., ECF No. 1, PageID.2–3.) Moreover, Plaintiff admits that *after* he filed grievances and "advocat[ed] for better condition[s] via phone," he discarded an item—which Plaintiff states was "[a] soiled tissue"—"by poking it through" the fence during yard period. (*Id.*, PageID.3.) Subsequently, Plaintiff was issued a misconduct ticket for possession of a weapon. (*Id.*) Although Plaintiff indicates that he filed grievances and "advocat[ed] for better condition[s] via phone" prior to disposing of the tissue "by poking it through" the fence, even liberally construing Plaintiff's allegations, it is the latter act of disposing of the tissue through the fence that is temporally related to the subsequent misconduct charge, not Plaintiff's use of the phone or filing of grievances. The timing of the issuance of the misconduct charge, therefore, does not support an inference that it was motivated by retaliation. Accordingly, for these reasons, Plaintiff has failed to adequately allege a causal connection between the protected conduct and the adverse action. Plaintiff therefore has failed to state a First Amendment retaliation claim against Defendants.

### B.        Fourteenth Amendment Due Process Clause

Plaintiff next claims that his due process rights under the Fourteenth Amendment were violated when he was charged with a false misconduct charge and then placed in segregation after he received the charge. (Compl., ECF No. 1, PageID.8.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was placed in the segregation unit after he was issued a misconduct ticket for possession of a weapon and that he continued to be housed in that unit even after the Hearings Investigator referred the misconduct charge "for rescinding by the Warden."

16

(Compl., ECF No. 1, PageID.3, 6 (emphasis omitted).) As explained below, Plaintiff has not alleged a deprivation that inevitably affected the duration of his sentence, nor has he alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484.

As to the first category—the existence of a deprivation that will inevitably affect the duration of a prisoner's sentence—Plaintiff's misconduct charge for possession of a weapon was a Class I, or major, misconduct. MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018); *see id.* ¶ B. Although Plaintiff does not specifically allege that he was found "not guilty" of the charge, he indicates that the misconduct charge was referred "for *rescinding* by the Warden," implying that he was *not* found guilty of the charge. (Compl., ECF No. 1, PageID.6.)

However, even if Plaintiff had been found guilty, he could not allege that such a major misconduct conviction resulted in any loss of good-time credits, and therefore, he could not show that the protections of the Due Process Clause were triggered. The United States Court of Appeals for the Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners, such as Plaintiff, convicted of crimes occurring after April 1, 1987. *See* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=165703 (last visited Mar. 15, 2022). In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the Sixth Circuit determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, the Sixth Circuit held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests,

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5).

because it does not necessarily affect the length of confinement. 355 F. App'x 909, 912 (6th Cir. 2009); *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Plaintiff's placement in segregation does not constitute an "atypical" and "significant deprivation." *Id.* In *Sandin*, the Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). In his complaint, Plaintiff does not indicate the date on which he left segregation; however, in Plaintiff's proposed supplemental complaint, he indicates that he was removed from segregation "[a]round June 8th, 2021." (ECF No. 6-1, PageID.35.) Plaintiff therefore was not placed in segregation for an extended period of time.

Further, if confinement in segregation does not implicate a protected liberty interest, it follows that Plaintiff's loss of certain privileges while in segregation does not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of

visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Consequently, Plaintiff's loss of privileges while in segregation did not trigger a right to due process. Therefore, Plaintiff has failed to allege any facts to show that his placement in segregation triggered a right to due process. *Cf. Rezaq v. Nalley*, 677 F.3d 1001, 1013 (10th Cir. 2012) (discussing that "extreme conditions in administrative segregation do not, on their own, constitute an 'atypical and significant hardship' when compared to 'the ordinary incidents of prison life'" (quoting *Sandin*, 515 U.S. at 484) (citing *Wilkinson*, 545 U.S. at 221)).

Furthermore, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim.[2]

## C.    Eighth Amendment

Plaintiff also alleges that Defendants violated his rights under the Eighth Amendment. (Compl., ECF No. 1, PageID.8.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the

---

[2] Moreover, to the extent that Plaintiff intended to raise a substantive due process claim regarding the issuance of the misconduct charge, which Plaintiff contends was "false," he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct proceedings. Consequently, any intended substantive due process claim will be dismissed.

"minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff alleges that around noon on May 27, 2021, he was taken to the segregation housing unit, room #30. (Compl., ECF No. 1, PageID.3–4.) Plaintiff contends that "[r]oom #30 is the most restrictive room in the MDOC[;] [i]t's a[n] extreme sensory deprivation room without a window view to the outside" and "a 'peek-a-boo' window on the front door." (*Id.*, PageID.4.) Further, Plaintiff states that "room #30 is squalid[;] human waste, feces, sem[e]n and spit stained every wall, surface and bed slab," the walls "were marked with blasphemous or profane graffiti," and "[t]he toilet was stained with black mold." (*Id.*) Additionally, while in the segregation unit, Plaintiff states that he lost "adequate nutrition, access to phones, fresh air, sunlight, cleaning supplies, outside activities, use of personal appliances and access to writing materials, ink pens and paper." (*Id.*, PageID.7.)

With respect to Defendants' involvement, or lack thereof, in Plaintiff's placement in, and continued detention in, segregation, Plaintiff states that, around the time that he was taken to shower before being placed in his cell in the segregation unit on May 27, 2021, he had a "verbal dispute" with Defendant Bledsoe regarding the issuance of the misconduct charge. (*Id.*, PageID.3–4.) Further, Plaintiff alleges that on or around May 29, 2021, Defendant Black worked on Plaintiff's unit, and Plaintiff asked Defendant Black why he had written the misconduct ticket. (*Id.*, PageID.4) Additionally, Plaintiff contends that Lieutenant Howard, "[a]s 'shift commander,' . . . 'reclassified' Plaintiff to 'punitive detention' based solely on the false pretense of misconduct." (*Id.*, PageID.7.) However, Plaintiff does not allege that he told Defendants about the conditions of his confinement while he was housed in segregation or that that they knew about the conditions of his confinement by some other means. Therefore, Plaintiff fails to allege any facts to show that Defendants were personally involved in the above-discussed conditions of confinement. Where individuals, such as Defendants, are named as defendants without an

allegation of specific conduct, the claim is subject to dismissal. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Furthermore, construing Plaintiff's *pro se* complaint with all required liberality, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), it appears that Plaintiff believes that Defendants are liable because they were involved in the issuance of the misconduct ticket, which then led to his placement in segregation, where Plaintiff was housed when he was subjected to the above-discussed conditions of confinement. (*See* Compl., ECF No. 1, PageID.8.) "The mere fact that [Plaintiff] was placed in detention, with nothing more, is insufficient to state an Eighth Amendment claim." *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003). Additionally, to the extent that Plaintiff seeks to hold Defendants liable for the actions of any of their subordinates, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. (*See* Compl., ECF No. 1, PageID.7 (stating that "Lieutenant Howard is Sergeant Bledsoe's superior officer," and "Sergeant Bledsoe is C/O Black's superior officer")); *see also Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory

liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, even setting aside the above-discussed deficiencies regarding Defendants' liability, Plaintiff fails to allege sufficient facts to state a plausible Eighth Amendment claim. With respect to the vast majority of Plaintiff's alleged deprivations while he was housed in segregation, Plaintiff fails to allege any facts to suggest that the deprivations were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)). Moreover, even assuming, without deciding, that Plaintiff had alleged sufficient facts to satisfy the objective prong of the Eighth Amendment standard, he fails to allege any facts to suggest that Defendants were aware of the conditions in his cell, but chose not to do anything about it. *See Farmer*, 511 U.S. at 837. Plaintiff therefore fails to show that Defendants were deliberately indifferent to a substantial risk of harm to Plaintiff, and thus, he fails to meet the subjective prong of the Eighth Amendment standard.

Accordingly, for all of the foregoing reasons, Plaintiff's Eighth Amendment claim will be dismissed.

### D.    Fourteenth Amendment Equal Protection Clause

Plaintiff's allegations in his complaint also implicate the Equal Protection Clause of the Fourteenth Amendment. (*See* ECF No. 1, PageID.6, 8.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right," such as speech or religious freedom, the rigorous "strict scrutiny" standard ordinarily governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. However, while a convicted prisoner does not forfeit all constitutional protections by virtue of his confinement, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights . . . ." *Price v. Johnston*, 334 U.S. 266, 285 (1948). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).

To establish a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Here, Plaintiff alleges that on June 2, 2021, the Hearings Investigator had "the false misconduct referred for rescinding by the Warden." (Compl., ECF No. 1, PageID.6 (emphasis omitted).) Plaintiff contends that, thereafter, "[t]here was no legitimate reason for Plaintiff's

continued detention at that point." (*Id.*) Plaintiff also alleges that on June 3, 2021, "white prisoners who'd gone to disciplinary court, and were found 'not guilty,' were returned to their general population rooms," "[b]ut not Plaintiff." (*Id.*) Further, Plaintiff alleges that "[o]nly Black[]s are being arbitrarily held in punitive detention for extended periods of time." (*Id.*, PageID.7.) Based on Plaintiff's allegations, it appears that Plaintiff believes that he was discriminated against on the basis of his race because he remained in segregation after the Hearings Investigator had "the false misconduct referred for rescinding by the Warden." (*Id.*, PageID.6 (emphasis omitted).)

As an initial matter, Plaintiff fails to allege any facts to show that Defendants were personally involved in his continued placement in segregation after the Hearings Investigator issued his recommendation that the charge be rescinded, and as a result, Plaintiff fails to show that *Defendants* discriminated against him on the basis of his race by continuing to house him in segregation. *See Gilmore*, 92 F. App'x at 190; *Frazier*, 41 F. App'x at 764; *see also Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

Moreover, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v.  Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff fails to allege any facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich.  Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) ("[D]irect evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the

challenged . . . action was motivated at least in part by prejudice against members of the protected group." (quoting *Johnson v.  Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003))); *see also Tibbs v. Calvary United Methodist Church*, 505 F. App'x 508, 512 (6th Cir. 2012) (discussing that "[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" (citation omitted)); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005) ("Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." (citation omitted)). Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework of *McDonnell Douglas*, 411 U.S. 792, because he fails to allege that the white inmates, "who'd gone to disciplinary court, and were found 'not guilty,' [and then] were returned to their general population rooms," were similarly situated in all relevant respects. (Compl., ECF No. 1, PageID.6); *see Umani*, 432 F. App'x at 458.

Although Plaintiff states that the Hearings Investigator had his "misconduct [charge] referred for rescinding by the Warden," nothing in the complaint suggests that the Warden had adopted the recommendation and had found Plaintiff not guilty of the charge. (Compl., ECF No. 1, PageID.6 (emphasis omitted).) As a result, nothing in the complaint suggests that Plaintiff was similarly situated in all relevant respects to the white inmates who were permitted to return to general population *after* going to "disciplinary court" and being "found 'not guilty.'" (*Id.*) To be a similarly situated member of another class, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[] [decisionmaker's] treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Here, the

27

comparative prisoners had "gone to disciplinary court, and were found 'not guilty;'" whereas, the Hearings Investigator had "referred" Plaintiff's misconduct charge "for rescinding by the Warden;" however, Plaintiff does not allege that, at the time that Plaintiff believes he should have been released from segregation, the Warden had adopted the recommendation and found him not guilty of the misconduct charge. (Compl., ECF No. 1, PageID.6 (emphasis omitted).) Plaintiff and the comparative prisoners were therefore not in the same position such that they were similarly situated when the comparative prisoners were released from segregation. *See Umani*, 432 F. App'x at 460. Accordingly, Plaintiff fails to state an equal protection claim.

### E.      Violation of MDOC Policy

Plaintiff appears to suggest that Defendants' actions violated MDOC policy. (*See, e.g.*, Compl., ECF No. 1, PageID.5–7.) However, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Claims under § 1983 do not provide redress for a violation of a state law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). The only way a policy might enjoy constitutional protection would be through the Due Process Clause.

To demonstrate such a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property

28

interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Accordingly, Plaintiff's allegations that Defendants violated MDOC policy fail to raise a cognizable federal constitutional claim.

### Conclusion

Plaintiff's motion to amend and supplement (ECF No. 6) will be denied. Furthermore, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    March 17, 2022          /s/ Robert J. Jonker
                                  ROBERT J. JONKER
                                  CHIEF UNITED STATES DISTRICT JUDGE